UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BABACAR DIENG,

                Plaintiff,

-against-

NEW YORK CITY NYPD, NEW YORK CITY FDNY, and THE CITY OF NEW YORK,

                Defendants.

24-cv-1834 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

*Pro se* plaintiff Babacar Dieng alleges that "the NYPD has persistently tracked, followed, harassed, intimidated, and violated [his] fundamental human rights" over the past twenty-two years. Dkt. 21-1 at 5. Dieng says he has been followed home and to work by marked and unmarked vehicles. *Id.* at 7. The NYPD has allegedly set up checkpoints to impede Dieng's movement and falsely accused Dieng of violating traffic laws. *Id.* Dieng says that the NYPD has also coordinated with the "security apparatuses" of Columbia University, Barnard College, and City College of New York to continue its surveillance and harassment on and around those campuses. *Id.*; *see also id.* at 8.

As for the FDNY, Dieng was waiting for assistance with a flat tire when a firetruck parked behind Dieng. Dieng alleges that this was "part of [the] broader pattern of surveillance and intimidation" that he suffered. *Id.* at 8.

Dieng, who is a Black, Muslim man of African origin, attributes this pattern to discrimination based on his "race, ethnicity, and religious affiliation." *Id.* at 11. After his complaints to various city agencies went nowhere, Dieng sued the NYPD, the FDNY, and the City of New York (collectively "the City") under 42 U.S.C. § 1983 for violating his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights and the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law §§ 290 *et seq.* Dkt. 21-1 at 2, 31-32. Dieng requests injunctive relief and $170 million in compensatory damages. *Id.* at 32-33. The City now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 30.

## LEGAL STANDARDS

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298-99 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Courts construe *pro se* complaints "liberally" and consider "the strongest arguments" the complaint suggests. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

## DISCUSSION

Even read liberally, Dieng's complaint fails to state a plausible claim for relief. The strongest argument suggested by Dieng's complaint is that the City violated his Fourteenth Amendment right to equal protection by surveilling and harassing him based on his race, religion, and ethnicity. But there is no plausible factual basis for this claim. *See Morren v. N.Y. Univ.*, 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) ("Plaintiff's beliefs—however strongly he may hold them—are not facts."). Dieng details instances when he saw police officers as he was going about his daily life, and he attached to the complaint photographs of police officers in various subway stations and in other locations around the city. But these photographs and anecdotes do not suggest that the police officers or vehicles were in any particular location because of him. Without more, and even giving Dieng every benefit of the doubt, his allegations reflect the everyday experience of New Yorkers who live and work in close proximity to others, and where not only police officers and firefighters, but also street vendors, taxis, dogwalkers, sanitation trucks—you name it—are around every corner. But that reality, absent further allegations indicating that Dieng was specifically targeted, doesn't give rise to a claim.

Nor do any allegations in the complaint support Dieng's conclusion that the alleged surveillance and harassment was motivated by discrimination. "There are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000). One way is for a plaintiff to assert that "they were treated differently than an identifiable, similarly situated group of individuals for malicious reasons, including but not limited to racial prejudice." *Elliott v. City of New York*, 2024 WL 1119275, at *7 (S.D.N.Y. Mar. 14, 2024) (citation omitted). But to survive a motion to dismiss on this type of so-called "selective enforcement" claim, plaintiffs must allege facts "that plausibly show a reasonably close resemblance between the plaintiffs and a comparator who received more favorable treatment from the defendants." *Hu v. City of New York*, 927 F.3d 81, 90-91 (2d Cir. 2019). Dieng does not allege any facts about any "similarly situated comparator," so he fails to state an equal protection claim under the "selective enforcement" theory of discrimination. *See id.* at 93.

Dieng also alleges a violation of his right to due process, which the Court construes as a substantive due process claim under the Fourteenth Amendment. "[T]he Fourteenth Amendment protects individuals from 'conscience-shocking' exercises of power by government actors." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001); *see County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (explaining that executive conduct violates the

Due Process Clause if it is so "egregious" as to "shock[] the conscience"). There is no precise test for determining whether conduct is conscience-shocking, but the concept's outer boundaries are clear: "[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson*, 239 F.3d at 252. Meanwhile, "negligently inflicted harm 'is categorically beneath the threshold of constitutional due process.'" *Matican v. City of New York*, 524 F.3d 151, 158 (2d Cir. 2008) (quoting *Lewis*, 523 U.S. at 849). With these guideposts in mind, the conduct that Dieng describes in his complaint does not come close to shocking the conscience. *Cf. Rochin v. California*, 342 U.S. 165, 172 (1952) (concluding that police officers' conduct "shock[ed] the conscience" when the officers forcibly pumped a suspect's stomach). Dieng says that he saw police officers, vehicles, and helicopters as he was going about his daily life. These incidents, again, simply reflect the reality of living in a densely populated city with a significant police presence.

Next, Dieng invokes his First Amendment rights to freedom of association and free exercise of religion. But he fails to draw any connection between these rights and the surveillance and harassment he allegedly experienced. The Constitution protects the association right "in two distinct senses": (1) the "choice[] to enter into and maintain certain intimate human relationships," and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). Dieng's complaint does not allege that the City's actions prevented him from association in either sense. Nor does it allege that the City's actions interfered with or burdened Dieng's religious practices in any way. *Cf. McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (holding that plaintiff stated plausible free exercise claim when the factual allegations indicated that defendant's actions may have "significantly impeded [plaintiff's] religious observance").

Dieng's Fourth Amendment claim similarly fails because there are no plausible allegations in the complaint that he has been surveilled, much less unconstitutionally so. As the Court already has explained, no factual allegations in the complaint indicate that the officers were in any particular place because of Dieng. But even if they were, the incidents that Dieng describes in his complaint all happened in public, where Dieng has no reasonable expectation of privacy in his movements. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) ("A person travelling . . . on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."). So even giving Dieng the benefit of the doubt and assuming that the officers were following him, this would not amount to an unconstitutional intrusion.

Dieng's remaining arguments are non-starters. Dieng includes a claim under the Ninth Amendment. But "[t]he Ninth Amendment is not an independent source of individual rights; rather, it provides a 'rule of construction' that [courts] apply in certain cases.'" *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007) (quoting *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983)). Dieng also says that his Eighth Amendment rights were violated. Assuming he meant to invoke the Amendment's prohibition against cruel and unusual punishments (as no fine or bail has been imposed against him), that provision has no application here because Dieng has not been

successfully criminally prosecuted. *See Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) (explaining that the Eighth Amendment does not apply until the state has "secured a formal adjudication of guilt"); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause [instead of the Eighth Amendment] because[] '[p]retrial detainees have not been convicted of a crime and thus "may not be punished in any matter—neither cruelly and unusually nor otherwise."'" (third alteration in original) (citation omitted)). And Dieng claims that the City's actions "contravene[d] the core tenets of equality, dignity, and non-discrimination that are enshrined in the NY[S]HRL." Dkt. 21-1 at 32. But the NYSHRL does not create a general cause of action for discrimination; instead, it makes unlawful discrimination in contexts that are not relevant here (such employment, housing, and credit). *See* N.Y. Exec. Law §§ 296, 296-a.[1]

Finally, by accusing the NYPD of coordinating with university "security apparatuses," Dieng's complaint suggests a claim for unlawful conspiracy in violation of 42 U.S.C. § 1983. To survive the City's motion to dismiss this claim, Dieng must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). The complaint contains no facts that plausibly allege these three elements. Instead, it contains only "conclusory, vague, [and] general allegations that the defendants have engaged in a conspiracy to deprive [Dieng] of his constitutional rights." *Id.* (citation omitted). These allegations are insufficient to survive a motion to dismiss, even under the most generous reading of the complaint.[2]

---

[1] In addition to these substantive problems, as the City points out, Dieng cannot sue the NYPD and FDNY directly because section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

[2] Because Dieng fails to plead sufficient factual content to survive the City's motion to dismiss, the Court need not address the City's alternative argument that the majority of Dieng's claims are time-barred.

## CONCLUSION

For these reasons, the City's motion to dismiss Dieng's amended complaint is granted and Dieng's request for a protective order, Dkt. 36, is denied as moot. The Court granted Dieng leave to amend his complaint once already. Dkt. 26. Because even "a liberal reading of the complaint" gives no "indication that a valid claim might be stated," this dismissal is with prejudice. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

The Clerk of Court is respectfully directed to terminate Dkt. 30 and close this case.

SO ORDERED.

Dated: October 28, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge